The next case on the call of the docket is Agenda No. 2, Case No. 131382, People v. Aguilar. Counsel, are you ready to proceed? Yes, Your Honor. Please proceed. Good morning, and may it please the Court. I am Assistant Attorney General Rachel Nikolashevsky on behalf of the people of State of Illinois. Defendant here was properly charged with aggravated DUI when he drove under the influence and did not possess a license because that license was suspended. Defendant argues he did possess a license, just a suspended one, but the privilege or permission from the State to drive is what matters when interpreting possessing a driver's license in subsection D1H. Subsection D1H aggravates DUI when a person does not possess a driver's license. The vehicle code itself defines driver's license and license to drive to require the privilege or permission from the State to drive. The provision of D1H includes not just driver's license, but all types of permissions from the State to drive, including permit, restricted driving permit, judicial driving permit, or monitor device driving permit. Therefore, the plain text of the statute indicates that it's the permission from the State to drive. This is reinforced by the code's also definition of suspension, which is defined as the temporary withdrawal of a person's license to operate another vehicle. Therefore, as a textual matter, it's impossible for the defendant here to have possessed a license because that license was suspended. And that's the interpretation that the Illinois Appellate Court adopted in Rosenbaum in 2011. It wrote that it's the permission that a person must possess to legally drive on the roads of Illinois that matters. And since Rosenbaum, the legislature has amended the statute seven times and has not changed text of subsection D1H, signaling its acquiescence to Rosenbaum's interpretation of the text. Was Rosenbaum dicta? Yes, Your Honor. The language in Rosenbaum was judicial dicta, but it was a point that was briefed by the parties. And so it was elevated to the status of judicial dicta, and it should have been used by the circuit court here when it was analyzing this issue. Counsel, what about the relationship between section H and section G? Does your position eliminate section G? I mean, section G goes into detail about what types of suspensions or revocations, you know, satisfy so that you can charge aggravated. And then we have H that doesn't speak to that. What about, what's the relationship between those two sections? If this court were to adopt the people's position, subsection D1G would be rendered surplusage because our interpretation of subsection D1H includes all suspensions and revocations because both of those instances are instances when someone does not possess a license. However, as the court held in Rosenbaum, we think that the reason there's surplusage was mere oversight from the legislature because all other types of interpretive textual canons point to the fact that possession of a license includes all suspended licenses. What about the interpretive canon that the specific controls over the general? Here you have section G that identifies four specific suspensions and revocations that will elevate the DUI from a misdemeanor to a felony. And so don't you bump up against that problem? In some ways, I think that that problem is a similar way of expressing that there is surplusage in the law. And so both of those two problems are true. But I think even if the surplusage in the canon made the text of subsection D1H ambiguous, then the court could look at extrinsic tools. And what extrinsic tools of construction confirm to us is that, like, when we look at the legislative history, we look at the revision history, it explains why there might be surplusage here. But, you know, we have to get to the legislature's intent. And here the legislature has very specifically identified four circumstances in which to elevate DUI from a misdemeanor to a felony. And that's it, just four. Isn't that where we begin and end our analysis? That is one part of the subsection. But in terms of considering what D1H means, just looking to see that the specific in D1G exists doesn't mean that the court should overlook what the text actually is in subsection D1H. So we're looking at making this aggravated. And it just doesn't seem logical that the legislature would outline specific reasons why you can elevate it to an aggravated DUI. I mean, basically taking your position, and we're saying, okay, if you have your license suspended or revoked for reckless homicide, we're going to elevate it. But also, if you don't have SR-22 insurance? Yes, Your Honor. I think that when you start looking at the DUI statute in the context of the code itself, there are other instances where the legislature has decided to punish driving without a license less harshly than punishing driving with a suspended or revoked license. And so carving out just specific types of suspended licenses or revoked licenses in subsection D1G doesn't necessarily control over D1H because also I think we have to look back to the text of D1H and what that text means. And so not possessing a driver's license, well, if you were to adopt an interpretation that would just say, well, not these types of suspended or revoked licenses, then you would understand that what the legislature was trying to do would be to aggravate instances in which someone has never possessed a license, but not those instances. Counsel, are you suggesting that this was just some oversight on the part of the legislature that they didn't include this? Yes, Your Honor. I'm suggesting that it's oversight. Okay. Follow up to that. This statute has been amended many times. Wouldn't the legislature have had an opportunity to correct that oversight in any one of those amendments? Yes, Your Honor. I think that they continue to not realize that there is surpluses. So the oversight continues. The oversight continues, Your Honor. And I think that looking back at the revision history, it's also important to start at the beginning of the revision history when subsection D1H was created. And when subsection D1H was created, what is now subsection D1G was in a different subsection entirely, not near the other aggravating factors, despite the fact that in that original version, it did say that that was aggravated DUI. And so when you consider the fact that they were in two different sections, it likely was that the legislature did not realize there was surpluses. And in fact, we can look at the bills to sponsors, both in the Senate and the House, when they discussed what they thought they were doing when they added subsection D1H. They believed that they were aggravating all instances of DUI when someone didn't have a valid license. And so that encompasses suspensions here. And so we know what G says, and so it sounds like you're asking us to find that section H is basically a catch-all. Yes, Your Honor. Section H is any instance when someone does not possess the license or the permission from the state to drive. And it's not just a driver's license. They have to not possess a driver's license, a restricted permit, or monitoring device driving permit. And so reading the statute in a way that made it so it's only the people who have never had a driver's license, it makes the fact that they've included monitoring driving permit and restricted driving permit also confusing because you can't get a monitoring device driving permit on the first of February. But doesn't it all make sense if you look at G? Because if you look at G and then you look at H, it says this is for people that have had a DUI and now are getting another DUI. And the indication is that you can get a DUI, you know, if you've never gotten a driver's license. Of course, that's when so it's scoffling. But then if you had a DUI and you have a restricted driving permit as, you know, used to be, you know, judicially entered and now you have the blow and go device. Those are all indications of a DUI related suspension or revocation. Is that correct? That is correct. And so if you look at H and how it interplays with G, which sets out the specifics for which a person here can be charged with aggravated DUI. And as you mentioned, talked about the bill sponsors. Does it make sense that what this legislation is aimed to do is stop, repeat DUI offenders? Yes. This legislature is this statute does stop, repeat DUI offenders. So why? So why? So why would SR 22 be? Why would they use that to elevate it to a felony when driving me without insurance? Not that it's a good thing, but it is not driving impaired. It doesn't fall under under this statutory scheme at all. What they were trying to do was aggravate all instances when someone was driving without permission from the state to be operating a motor vehicle. Subsection D1G, when it was created, was targeting specific types of DUI offenses. And then the legislature essentially broadened it and said for any instances in which someone does not possess a license. And there are other types of aggravators in the statutes. For example, if someone doesn't drive with liability insurance and they are driving drunk, that's an aggravating factor. So they have a whole list of different types of aggravating factors. And so what the legislature was intending when they enacted subsection D1H was to include all different types of suspensions or revocations or expired license instances. And narrowing subsection D1H would say that what the legislature was really trying to do here was only for people who have never possessed any kind of driving license permission. But that interpretation of the statute doesn't make very much sense once you consider the other words in subsection D1H. And so even if surpluses, even if the canon of surpluses introduced some kind of ambiguity in understanding what the subsection was doing, this court could look to the revision history and it could look to what the legislature said they were trying to do when they were discussing this bill in both the House and Senate. Counsel, we could do that, but why shouldn't the rule of lenity apply in this case? The rule of lenity should only apply when there's a grievous ambiguity, which occurs when the court can no more guess what the meaning could be after it has applied all the different types of statutory interpretive tools, both intrinsic and extrinsic tools. And once the court considers all of that, the plain text of the statute, the vehicle code's definitions, the definition of what it means to have a suspended license, and the legislative debates as well as the revision history, there is not a mere guess to what subsection D1H means. And therefore, the legislative history confirms what's clear in the plain text of D1H, that it's the permission to drive that matters, and therefore those with a suspended license do not possess a license. Counsel, I just keep coming back to, you know, Section G and Section H. Section G not only lists specific types of suspensions that can allow you to raise it to aggravate it, it doesn't list other ones. And so it seems as if you want us to interpret H to be a catch-all, as I mentioned, and also how are we to consider the fact that the legislature did not mention what's in H or any other suspensions in Section G? I think that subsection D1G essentially is – I think it just goes back to the question of how much surplusage really is supposed to control the meaning here. And so when this court's analyzing what subsection D1H means, other parts of both the statute and the overall vehicle code matter. And in other instances, for example, when the legislature has thought about driving without – with never possessing a license or driving with a suspended or both license, the legislature has chosen to punish more harshly instances of suspension and revocation more than just not possessing the license entirely. And so when the court is thinking about what subsection D1H is doing, it should be thinking about it not just in terms of D1G but the plain text of D1H and also in the context of the overall vehicle code. And so construing those things together, ultimately, even if this court were to find that the statute is ambiguous, it can look to extrinsic tools to resolve that ambiguity. But the text of D1H itself isn't ambiguous. It's only when you consider it in response to D1G that there is redundancies in the statute. But redundancies themselves should not create an additional interpretation unless the plain text can support that. And here the plain text, there is not a plain text interpretation of D1G that both satisfies the surpluses issue but also makes sense with the words that are on the page for D1H. Are H and G inconsistent? They're not inconsistent, but D1G is just redundant when you read D1H. That's really what's going on. They're not really inconsistent with each other, but D1G is redundant in penalizing the same type of conduct. And appellate courts, even besides Rosenbaum, have had this issue where they've charged people with both violations of D1G and D1H for the same conduct, essentially. And so it's not necessarily inconsistent, but it's penalizing the same thing. And so if there are no further questions, the court should reverse the judgment of the lower court and remand the case to permit the circuit court to reinstate defendant's charges. Thank you, counsel. Thank you.  Good morning. Good morning, and may it please the court. My name is Manuela Hernandez. I'm from the Office of the State Appellate Defender, and I represent the appellee, Mr. Germán Cruz Aguilar, in this matter. Mr. Cruz Aguilar possessed a driver's license that was suspended but not for any of the reasons enumerated in Subsection G. It was only because he failed to certify through an SR-22 form that he had insurance. That's why his license was suspended. And this is a category that the legislature excluded from Subsection G. He still held the document issued by the state. It was not voided. It was not expired. He possessed a driver's license under Subsection H, and Subsection H does not breach his conduct in this case. This is about what the legislature wrote, not about what the state wishes the legislature would have written, because the state's position stripped to its essentials is that a person who drives drunk while they have a suspended license should be charged with a felony, period. And that is not the law, and that is a policy view that the legislature did not adopt. Now, as this court has pointed out, the state's position is that— or the state's position requires that Subsection G be eliminated, for Subsection G to disappear, because that is the only way that we can read Subsection H the way that they are reading it. But Subsection G makes a DUI an aggravated and a felony when the driver's privileges are suspended for one of very specific types of suspension, and as this court has pointed out, are related to DUIs in the topic of DUI, which is a prior DUI, a summary suspension because of a refusal to take a breathalyzer test by going more than .8, for failure to stop and report an accident where there's been injury, and reckless homicide. Now, this is not how this court should read the statute. The legislator wrote two specific provisions. It enumerated specific categories, it created limitations, and when the legislature does that, this court should give effect to both provisions, not one at the expense of the other. I would like to make three points. First, that the plain text of Subsection H does not cover Mr. Cruz Aguilar's conduct. Second, that the state's reading, and the state agrees with this, would render Subsection G superfluous. And third, even if there is ambiguity, the rule of lenity should require that this court rule in my client's favor. Again, the state's real argument is not about the text. The state is making a policy argument. The state does not like where the legislature drew the line. And that may be an argument that they want to make to the legislature, but it's not an argument that this court can act on without rewriting the statute and basically taking a pen and crossing over Subsection G. Now, Subsection H says that a driver is liable when they drive drunk. If they did not possess a driver's license, bless you. And Subsection G, which is in the same list of aggravating factors, says that they're liable when the driving privileges are revoked or suspended. Now, there's a difference between saying, did not possess a driver's license and driving privileges are revoked or suspended. This is different vocabulary that was used by the legislature, which means they meant different things. Now, the state is asking this court to collapse that vocabulary and to say that they mean the exact same thing. Possessing of a driver's license means that the driving privileges are revoked or suspended. But if that were the case, the legislature would have simply used the same language if they meant the same thing. Or, as the court in Rosenbaum suggested, they should have simply used the word valid in Subsection H if that's what they meant. That's not what they meant because that's not what they wrote. And the legislature knows very well how to use the word valid throughout the vehicle code. It says valid current driver's license, valid commercial driver's license, and it didn't do that here in this particular law. Now, given that both subsections are right next to each other and use very different language, the text of these subsections shows us that the legislature meant something different with each one of them. Now, Subsection G is not a vague provision. How do you respond to your opponent's argument that did not possess a driver's license doesn't mean just physically possessing the actual driver's license, but really refers to the permission to drive? Well, so, as I was just explaining, Subsection G specifically says where the driving privileges are revoked or suspended. So it does focus on the driving privileges aspect of the license. Now, when we say possess a driver's license, we don't necessarily mean the actual car itself. It's the fact that the state has issued a license to someone to drive, whether it may be with some restrictions or not. So it's not really the car itself. It's the fact that the state has issued this license or this permission for someone to drive at any given point because the person, at the very least, has shown that they can drive a car. And there is nothing absurd about penalizing someone who drives drunk when they haven't even showed the ability to drive a vehicle. That is not absurd. It may be a policy decision that the state does not like, but it is not absurd. Does that answer your question? No. No? But that's okay. Well, would you repeat the question? Well, your opponent basically argued that having a driver's license means permission to drive, and he didn't have permission to drive at that time, so he didn't have a driver's license. And that's what I was asking you to respond to. Well, as I said, those are not the same concept. Permission to drive does not equal driver's license. If you look at the definitions in the vehicle code, there is a definition for driver's license, which is a license that's issued by the state, and there is a definition of license to drive, which is a much broader concept, which includes or involves specifically the privileges to drive. So they are not the same thing. Possessing a driver's license does not mean possessing the—or that your driving privileges are not suspended or revoked. It simply means that you have been issued a driver's license by the state. Whether that license is now suspended or revoked, that's a separate question. That's addressed by Subsection G. Counsel, it seems like the core of your argument is that your client's conduct did not fall within the realm of G or H. That's correct. So my client's conduct is a misdemeanor DUI offense. So he can still be punished, and then there are other provisions that punish driving with a suspended license generally. And that could be also something that he could be charged with, but based on the way that these provisions were drafted, his conduct does not fall within any of these provisions. And I don't think that that's absurd or doesn't make sense. The state may not like it. The state may want everybody that has a suspended license for whatever reason to be guilty of a felony if they drive drunk. That's fine. They can take that to the legislature. But the reality is that is not the policy view that the legislature took. They drew a line. Only suspensions for these particular incidents aggravate a DUI to a felony. At the end of the day, you want the court to apply the rule of lenity, right? Is that correct? Well, yes. If this court finds that there is ambiguity, even after looking at the canons of construction, yes, the rule of lenity should apply. And that's important because given the way that the statute was written, it would be misleading for anybody who reads the statute to think, well, you know, I was driving drunk and my license was suspended for, say, SR-22 violation. And you would read the statute and you'd think, oh, well, that's not one of the suspensions that is listed in Section G. And that would be a reasonable reading of the statute. But that person would be wrong. Do you want us to find that the statute is ambiguous? Well, no, Your Honor. I believe that the statute, given the language that it uses, given the canon against surplusage, and even the legislative history here, the statute is not ambiguous. But if this court were to find that there's another reasonable reading, and there was that reading by the 2nd District in Rosenbaum, that's the way that that court read the statute, so it's not completely out of the realm of possibilities to read it that way. But that is not our position. But if this court does find that it is ambiguous, the rule of lenity should apply. So, again, the state argument here is not really about the plain text or about Mr. Cruz's driving history or about what the suspension is. The engine of this appeal is that the state does not like that the only suspensions that aggravate a misdemeanor DUI into a felony are four, and the other ones do not. The state just simply does not like that. But the legislature has excluded many other types of suspensions from the statute. For example, excluded a suspension for not paying child support. Suspensions for drag racing, for example, are not part of the statute. And this was a careful analysis that was made by the legislature when they decided to pick what suspensions would be aggravating. Now, the state believes the line is in the wrong place, but I'm asking this court to uphold this line, the one that the legislature clearly drew in the words that it chose, in the structure that it built, and if that line is in the wrong place, then the state can go to the legislature and ask them to move it, but until then, this court should enforce the statute as written. The 5th District did that. I ask that you affirm the 5th District's decision. There are no other questions. Thank you, counsel. Thank you. Some brief rebuttal. The primary question before this court today is what did the legislature intend when it was drafting subsection D1H? When I was listening to my friend's remarks, I didn't hear an interpretation of the actual text of D1H. Her argument went back to the fact that D1G exists, and there's surpluses between these two, but the question in D1H is what does it mean to possess a driver's license? And as my friend acknowledges, it can't be the actual car, and the court in Hardeman rejected that idea, and even if it were that, under the vehicle code, it's not lawful to possess a physical car after your license has been suspended or revoked. And in terms of what could be interpreted as has never issued, that interpretation also has limitations because it also does violence to D1H because it reads in words that are not in that part of the statute. In other parts of the vehicle code, the legislature has written someone has never been issued a license before, and they didn't use that language here. They said does not possess a driver's license or a variety of different types of permits. And so at the very least, there's ambiguity in this statute, but the plain text of D1H itself is not ambiguous. And then one final point I'd like to make is just that SR-22 is a financial responsibility violation, but the requirement of SR-22 insurance is only imposed when someone has a history as a problem driver where they have been getting into collisions with other people without having insurance itself. And so it's not just merely the lack of not having insurance. It's previous conduct like that that requires the state to suspend that license. And I don't think it's counterintuitive to think that the legislature included that in D1H. I think what the legislature was trying to do was to encompass all instances, revocations, suspensions, expirations, and where someone no longer has the privilege to drive. And therefore, this court should reverse the judgment of the lower courts and remand the case to permit the circuit court to reinstate the charges here. Thank you, counsel, for your argument. Case number 131382, People v. Aguilar, is taken under advisement as agenda number 2.